IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Ben Howard Smith,              ) | C/A 2:08-0201-PMD-BM |
| )  |  |
| Plaintiff,      ) |  |
| ) |  |
| v.               ) |  |
| ) | **REPORT AND RECOMMENDATION** |
| Joseph K. Coffy; Bob Atkinson;  ) |  |
| Linda G. Walters,              ) |  |
| ) |  |
| Defendants.   ) |  |

This action was originally filed in the United States District Court for the Southern District of New York, where the pro se Plaintiff resides, but was subsequently transferred to the District of South Carolina by Order filed December 26, 2007. See Court Docket No. 1. Following transfer, one of the original named Defendants, Percy B. Harvin, was dismissed as a party Defendant. See Order filed August 7, 2008. See also, Orders filed January 13, 2009 and June 16, 2009.

Two of the remaining Defendants, Bob Atkinson and Linda Walters, filed a motion to dismiss pursuant to Rule 12, Fed.R.Civ.P., on August 14, 2009. On November 12, 2009, the Court entered an Order granting Atkinson and Walters' motion to be dismissed as party Defendants in Plaintiff's First and Fourth Causes of Action, which are asserted under 42 U.S.C. § 1983. The conspiracy claim asserted against these two Defendants involving his state court case and for having hired "agents" to break into his house and otherwise harass him, asserted in Plaintiff's Second Cause of Action, was also dismissed. However, all remaining claims against these two Defendants in

1



Plaintiff's Second Cause of Action, as well as Plaintiff's fraud claim against these two Defendants in his Third Cause of Action, were allowed to proceed.

In the interim, two other originally named Defendants, Keith Josey and Ronnie Stewart, filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on September 22, 2009. On March 29, 2010, the Court entered an Order granting Josey and Stewarts' motion for summary judgment, and dismissing them as party Defendants in this case.

The Defendants Atkinson and Walters have now filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on July 1, 2010. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on July 2, 2010, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, these Defendants motion may be granted. Plaintiff thereafter filed a response in Opposition to the motion for summary judgment on August 3, 2010, to which the Defendants filed a reply memorandum on August 12, 2010.

These Defendants motion for summary judgment is now before the Court for disposition.[1]

**Background and Evidence**

With respect to these two Defendants, the Plaintiff alleges in his verified complaint[2] that he

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants Atkinson and Walters have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

2



is an African-American who answered an ad in a newspaper regarding a house for rent with an option to purchase. The sellers/landllords are alleged to have been the Defendants Atkinson and Walters, both Caucasians. Plaintiff alleges that he gave these Defendants a Two Hundred Dollar cash deposit, with an additional Eight Hundred Dollars being due "a month later at closing . . . .". Plaintiff alleges that he subsequently demanded his money back, and that the Defendants wrote him "a bad check which he could not cash". Plaintiff alleges that he then sued the Defendants and won a judgment in County Magistrate's Court for the return of his deposit. See also, Exhibit B attached to the Complaint. Plaintiff alleges he then contacted Ronnie Stewart (a Sheriff's Deputy) to have his judgment executed, but that after Stewart spoke with the Defendant Joseph Coffy (Atkinson and Walters' attorney), he (Stewart) agreed not to execute the judgment. Plaintiff alleges that Stewart and Coffy are both also Caucasians.

Plaintiff alleges that Coffy, Stewart, Atkinson and Walters then improperly "conspired" with former Defendant Percy Harvin, a County Magistrate, to set aside the judgment. Plaintiff alleges that "Harvin secretly hated and clandestinely worked against the blacks but overtly acted as their friend . . . .". Plaintiff further alleges that Harvin agreed to set aside the judgment as a "payback favor" to Coffy for helping him get the Magistrate's position. Plaintiff alleges that he did not receive notice that his judgment had been set aside until he got a copy of Harvin's order in the mail on January 4, 2006.[3]

Plaintiff also alleges that Walters and Atkinson (together with Coffy) hired "agents" to find out where he was staying, with the "hired agents" then being directed to break into and enter Plaintiff's residence whenever he was not home. The purpose of these break-ins was to burglarize

---

[3]Harvin's order is dated October 4, 2005. See Plaintiff's Exhibit A, attached to Complaint.

3



Plaintiff's home and steal his belongings. Plaintiff alleges that these "agents" stalked him, and followed him everywhere. Plaintiff further alleges that Coffy, Atkinson, and Walters "told lies" on him, which caused him to be evicted from places where he was staying. Plaintiff alleges that Atkinson told him that he [Plaintiff] was "crazy for suing a white man, and that he would have his friends lynch [Plaintiff] for doing so . . . .". Plaintiff also alleges that Coffy told him that he had instructed Atkinson and Walters not to refund the deposit, because Plaintiff "was a black man and they don't have to refund monies to black men in South Carolina." The remainder of Plaintiff's allegations relate to the other Defendants.

As a result of these Defendants' previous motion to dismiss, they have already been dismissed as party Defendants from Plaintiff's First and Fourth Causes of Action, asserted under 42 U.S.C. § 1983. Walters and Atkinson were also dismissed from Plaintiff's § 1985 claim in his Second Cause of Action with respect to claims of a conspiracy involving his state court case and that these Defendants hired "agents" to break into his house and otherwise harass him. Therefore, the only claims remaining against these two Defendants are Plaintiff's § 1985 claim in his Second Cause of Action with respect to these Defendants allegedly having told innkeepers and motel owners that Plaintiff should not be given rooms in their establishments because he was a troublemaker and "hated white people", that Atkinson told him he was crazy for suing a white man and that he would have Plaintiff lynched for doing so, and further that they would never rent or sell a house to him nor would they pay him his deposit back because he is an African-American. Plaintiff's Third Cause of Action against these Defendants for fraud is also still pending.

In support of summary judgment on these claims, the Defendant Walters has submitted an affidavit wherein she attests that her name is now Linda Walters Atkinson (although for purposes



of this opinion, she will continue to be referred to as the Defendant Walters), and that in 2002 she owned a home located at 1760 Baggett Road in Manning, South Carolina. Walters attests that she now owns this property with her husband, the Defendant Atkinson. Walters attests that in or about late November or early December 2002, she placed an advertisement offering the property for rent, and received a call from the Plaintiff expressing an interest in renting the home and asking to view the property. Walters attests that she told the Plaintiff that she intended to rent the property with an option to purchase under a two year agreement in exchange for a security deposit of Five Hundred ($500.00) Dollars, plus Four Hundred ($400.00) Dollars per month rent and One Hundred ($100.00) Dollars a month toward a down payment to purchase the property.

Walters attests that she and Atkinson subsequently drove to the property, where they met the Plaintiff. Walters attests that Plaintiff claimed to have left his drivers license at home, and did not have any picture identification. After Plaintiff viewed the property, he stated that he wanted to rent the home but did not have the full Five Hundred Dollars required for the security deposit at that time. Walters attests that she told Plaintiff that he could pay Two Hundred Dollars toward the deposit now and rent the property if he signed a lease agreement and paid the other half with the deposit, plus the first months rent and the One Hundred Dollars toward an eventual down payment on the property, for a total of Eight Hundred Dollars by the end of the month. Walters attests that Plaintiff agreed and gave her Two Hundred Dollars in cash, for which she wrote him a receipt. See also, Exhibit 1 to the Affidavit [Receipt].

Walters attests that Plaintiff made arrangements to meet her at her office the following week to sign the lease and pay the balance of the deposit, but that he later telephoned her and said he could not make the appointment. Plaintiff gave Walters a telephone number and address of the hotel

5



where he said he could be reached and where she should send him a copy of the lease to sign and return. Walters attests that she then called the hotel where Plaintiff was staying, but was informed by the manager of the hotel that no one was staying there under the name Howard Smith, nor had there been anyone by his description, or the description of his vehicle, at the hotel in recent history. Walters attests that she did not discuss any other matters regarding Plaintiff with the hotel manager, with the manager or owner of any other hotel, nor did she instruct any hotel owner or manager not to rent a room to the Plaintiff because he is black or for any reason. Walters attests that she also did not "conspire" to keep Plaintiff from staying at that hotel or any hotel.

Walters attests that she had no other contact information for the Plaintiff, so she waited thirty (30) days for the Plaintiff to contact her. Plaintiff did not contact her during that time, nor did he send the remaining amount of money for the security deposit or the first month's rent, so after the thirty (30) days had passed she again advertised the property for rent in the newspaper and eventually rented it to a third party. Walters attests that, approximately three months later, she received a phone call from Plaintiff, who was very belligerent and upset because she had rented the house to someone else. Walters attests that Plaintiff threatened to sue her for discrimination and accused her of not wanting to rent her house to a black man. Walters attests that she told Plaintiff that she rented the house to another party because of his behavior, not his race, and ended the phone call. Walters attests that Plaintiff called again the following day and left a voice mail demanding his deposit back by postal money order, but did not leave a phone number or address in his message.

Walters attest that the next time Plaintiff called, Atkinson spoke with him, following which he sent Plaintiff a check for Two Hundred Dollars. Walters attests that, a few days later, she received another phone call from Plaintiff stating that they had sent him a "bad check" and that it was

6



made out to the wrong person. Walters attests that she checked their copy of the check and noted that it was accidently made out to "Howard D. Smith" instead of "Howard B. Smith". Walters attests that she told Plaintiff to call back when her husband was home from work.

Walters attests that, sometime later, she received another phone call from Plaintiff threatening her with a lawsuit, with Plaintiff stating that he "would be owning" her house and that bad things would happen to her. Walters attests that she told Plaintiff she would call the police if he ever contacted her again. Walters attests that she did not thereafter hear again from the Plaintiff until she was served with papers to appear in Clarendon County Magistrate's Court. Plaintiff had filed a lawsuit for the return of his security deposit. Walters attests that following a court hearing on May 13, 2004, Plaintiff was granted a judgment in the amount of Two Hundred Dollars plus Fifty Five Dollars in costs, and was instructed to present the original cashiers check in the name of Howard D. Smith along with his picture identification to the Defendant Coffy, Walters and Atkinson's attorney, to get the check cashed. See also, attached Exhibit 2 [Court Judgment]. Walters attests that the judgment only lists the amount owed, but does not state the Judge's specific instructions to the Plaintiff.

Walters attests that, some months later, she received a call from a deputy with the Clarendon County Sheriff's Office informing her that Plaintiff had been calling them and asking them to seize and sell her property to satisfy the judgment. Walters attests that the deputy recommended that she call the Clarendon County Chief Magistrate. Walters further attests that, prior to this phone call, she had never met or spoken with the Sheriff for Clarendon County, any deputy sheriff for Clarendon County, or the Judge. Walters attests that she then called the Judge and explained the facts outlined above and eventually took him copies of the complaint, judgment, and cashier's check, and

7



that on October 4, 2005, Coffy filed a motion to set aside the judgment because Plaintiff had failed to follow the instructions given to him at the May 13, 2004 hearing. <u>See</u> <u>also</u>, attached Exhibit 3 [Motion]. Walters attests that on October 4, 2005, the judgment against her and Atkinson was set aside. <u>See</u> <u>also</u>, Exhibit 4 [Order]. <u>See</u> <u>generally</u>, Walters' Affidavit, with attached Exhibits.

   The Defendant Bob Atkinson has also submitted an affidavit, whereas he attests to the same general facts as attested to by Walters in her affidavit. Atkinson further attests that he never contacted any hotel manager or operator regarding the Plaintiff, never discussed doing so with Walters or any other person, and that he did not conspire to keep Plaintiff from staying in any hotel. With respect to the check sent to the Plaintiff for a refund of his deposit, Atkinson attests that he went to the bank and obtained a cashier's check from the customer service desk representative at NBSC for Two Hundred Dollars, and mailed Plaintiff the cashier's check that day. Atkinson attests that a few days later Plaintiff came to his place of work and began yelling in front of customers that he had given Plaintiff a "bad check". Atkinson attests that Plaintiff left his office when he called the Lexington County Sheriff's office. Atkinson attests that although Plaintiff once again called Walters and threatened to sue her, he did not hear from Plaintiff again until he was served with papers to appear in Clarendon County Magistrates Court because Plaintiff had filed a lawsuit for the return of his security deposit.

   Atkinson attests to the same facts as did Walters with respect to what transpired at the hearing and thereafter, and attests that he did not speak to Plaintiff after the hearing and never at any time threatened to have him lynched nor did he make any derogatory comments to him about his race. Atkinson further attests that he has never in his life said that "a black man cannot sue a white man in South Carolina". Atkinson further attests that, prior to Plaintiff's complaints to the Clarendon

8



County Sheriff Office about him, he had never met with or spoken to the Sheriff for Clarendon County, any deputy sheriff for Clarendon County or the Judge that handled their case, nor did he ever meet with any of these individuals or conspire with them against the Plaintiff. See generally, Atkinson Affidavit.

In opposition to the Defendants' motion, Plaintiff has submitted an affidavit wherein he attests in relevant part that when he was shown the house it needed some repairs, and that the Defendants promised the repairs would be completed shortly. Plaintiff attests that he agreed to rent the house with an option to purchase for Two Hundred Dollars deposit, with a balance of Eight Hundred Dollars being due on January 1, 2003, that he could move in on January 1, 2003, and that all repairs would be completed by then. Plaintiff attests that the Defendants said they would meet him back at the house on January 3, 2003 to complete the transaction and let him move in. Plaintiff also attests that he only received a receipt after demanding one. See also, attached Exhibit A [Receipt].

Plaintiff attests that he arrived at the house on January 3, 2003 and waited all day, but the Defendants never came to complete the transaction. Plaintiff attests that he then called the number on the receipt and left a message on the Defendants' answering machine, telling them that he was at the house with the balance of the deposit and that he was prepared to move in as agreed. However, the Defendants still did not ever show up at the house. Plaintiff also attests that while waiting at the house, he observed that the promised repairs had not been completed, and that there was no running water.

Plaintiff attests that the following day, January 4, 2003, he called the Defendants and demanded his deposit back, but that the Defendants refused to send back his deposit. Plaintiff attests

9



that when he called a second time to demand his deposit back, the Defendants sent him a "bogus bad check" that he could not cash because it had the wrong name on the check. Plaintiff attests that he called the Defendants and told them they had put the wrong name on the check and asked them to send him a replacement check. Plaintiff attests, however, that the Defendants refused to replace the bad check they had given him. Plaintiff attests that he subsequently confronted Atkinson at his place of business (a flea market), but that Atkinson again refused to exchange the check for a good check. Plaintiff attests that Atkinson then stated "we . . . never intended to rent or sell the house to you . . . because you are black and we don't like you. We never will rent or sell a house to you because we don't want you or other black people living next to us. We . . . don't care how much money you spent or lost or what you bought to move in the house, we are not going to refund you any deposit back." Plaintiff attests that Atkinson then said "I will have my friends lynch you and then we won't have to worry about paying you any money back."

Plaintiff attests that he told Atkinson he would sue him in court for his deposit and that Atkinson dared him to sue and stated "I have a lot of judges in my pocket who are my friends and they will see to it that I never have to pay you your money back." Atkinson then threatened to call the Sheriff. Plaintiff attests that he then left the flea market, and later sued the Defendants in Magistrate's Court, where he was awarded a judgment.[4]

Plaintiff alleges that on May 13, 2004, Atkinson asked him "are you crazy . . . ."[5]

---

[4]Plaintiff also states that he "later learned that Atkinson had called the local Sheriff." See Plaintiff's Affidavit, ¶ 47. No facts are alleged to support this conclusory statement, and it has therefore not been considered. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993)[Plaintiff's conclusory allegations insufficient to maintain claim].

[5]In the affidavit, at ¶ 51, Plaintiff sets forth this statement as "are you crazy [for suing him a
(continued...)



Plaintiff also attests that he "heard" the Defendants state that they were not going to pay the court judgment because a black man cannot sue a white man in South Carolina. Plaintiff attests that after waiting more than six months for the Defendants to pay the judgment, he contacted the Clarendon County Sheriff and gave the judgment and relevant papers to Deputy Stewart to execute. See generally, Plaintiff's Affidavit, with attached exhibits.[6]

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990)

---

[5](...continued)
white man in court]". The inference Plaintiff assigns to Atkinson's statement is just that, an inference, not a fact, and therefore the language in brackets has not been considered as a factual allegation.

[6]Plaintiff's affidavit contains other factual allegations which relate to Defendants and/or claims which have already been dismissed, and have therefore not been considered.

11



# I.

## (Claim under 42 U.S.C. § 1985)

Plaintiff's Second Cause of Action for conspiracy is asserted under 42 U.S.C. § 1985(3). In order to pursue a claim under § 1985(3), Plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving him the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the Plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). Plaintiff must also set forth facts to show that "some racial, or perhaps otherwise class-based, invidious discriminatory animus [lay] behind the [alleged] conspirators' action". Thomas, 165 F.3d at 145; see Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). "Moreover, the law is well settled that to prove a section 1985 'conspiracy', a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights..." Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995).

With respect to Plaintiff's claim that Walters and Atkinson engaged in a conspiracy with innkeepers and motel owners to keep him from being given rooms in their establishments because he was a trouble maker and "hated white people", Plaintiff has presented no evidence whatsoever to support this claim. Both Walters and Atkinson state under oath that they did not instruct any hotel owner or manager not to rent a room to the Plaintiff because he was black or for any reason, nor did they conspire to keep Plaintiff from staying at any hotel. Plaintiff has provided no affidavits, deposition testimony, or any other evidence from a hotel owner or anyone else to substantiate this claim, nor does he even mention this claim in the affidavit he filed in opposition to the Defendant's motion for summary judgment. Therefore, the Defendants are entitled to summary



judgment on this claim. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].

With respect to Plaintiff's claim that these Defendants engaged in a conspiracy not to rent or sell a house to him and to keep his deposit because he is an African-American, and otherwise made derogatory comments to him, Defendants argue that Plaintiff has failed to submit any evidence to show any conspiracy to not rent him a house because of his race or to fail to return a security deposit to him because of his race. Rather, Defendants contend the evidence shows that they were willing to rent the house to the Plaintiff, as evidenced by the written rental agreement between the parties and their acceptance of a deposit, while their willingness to refund this deposit is evidenced by the cashier's check that was tendered to the Plaintiff, which he was unable to cash solely because it contained the wrong middle initial.

For his part, Plaintiff states in his affidavit[7] that the Defendants both met him at the rental house, showed him around the rental house, that Walters (according to Plaintiff's affidavit) flirted with him, and agreed to rent the house to him with an option to purchase, following which they

---

[7]In his memorandum opposing summary judgment, the only argument Plaintiff makes is that the Defendants' motion should be denied because their previous motion to dismiss was denied, in part. Plaintiff is not entitled to dismissal of the Defendants' motion on that basis, as a Rule 12 motion to dismiss and Rule 56 motion for summary judgment are considered under different standards. McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 760 (7th Cir. 2006)[Summary judgment standard is "a different and significantly more demanding standard than the Rule 12(b)(6) standard."]. In light of Plaintiff's pro se status, however, the undersigned has considered the sworn statements in his affidavit as arguments against summary judgment on the merits.

13



executed a rental agreement, a copy of which is attached to his affidavit.[8] Plaintiff then attests that after the Defendants did not show up on the day he was supposed to move in and had not completed repairs that were supposed to have been done, he demanded his deposit back (which he had to ask for twice) which resulted in his receiving the check with the incorrect name on it. Plaintiff further attests that Atkinson then told him that he and Walters never intended to rent or sell the house to him because he is black, that they would never rent or sell a house to him because they did not want black people living next to them, that they were not going to refund Plaintiff any deposit back, and that he would have his friends lynch the Plaintiff in order to keep from having to pay Plaintiff any money back. Plaintiff further states in his verified complaint that the Defendant Coffy told him that he had instructed Atkinson and Walters not to refund the deposit, because Plaintiff "was a black man and they don't have to refund monies to black men in South Carolina."

Although the Defendants dispute Plaintiff's version of events, the Court cannot choose to believe the averments of fact contained in the Defendants' affidavits and disregard those of the Plaintiff. At summary judgment, this Court cannot make credibility determinations to resolve issues of fact; Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991); Davis v. Zahradenick, 600 F.2d 458, 460 (4th Cir. 1979); and where a conflict from a set of given facts exists, this Court is required to consider the facts presented, and all inferences to be drawn from the facts, in the light most favorable to the non-moving party. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980); see Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), overruled on other grounds, 490 U.S. 228 (1989). Therefore, in considering whether summary judgment in this

---

[8] As noted, the Defendants have also submitted a copy of this receipt/rental agreement as an exhibit.



case is appropriate, the undersigned must assume that the Plaintiff's version of the facts is true. Considered pursuant to this standard, Plaintiff's sworn statements as to what Atkinson and Coffy said to him, considered to be true for purposes of summary judgment, are sufficient to give rise to a genuine issue of fact as to whether Walters and Atkinson, joined by Coffy, engaged in a conspiracy for the purpose of depriving Plaintiff of the equal protection of the laws, that they engaged in an overt act in furtherance of that conspiracy, and that as a result he was injured in his person or property and was deprived of a right or privilege of a citizen of the United States, all of which was based on a racial animus. Thomas, 165 F.3d at 145-146; Simmons, 47 F.3d at 1377; 42 U.S.C. § 1982 ["All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property."]; cf. Bryant v. Polston, No. 00-1064, 2000 WL 1670938 at * * 6-7 (S.D.Ind. Nov. 2, 2000)[Plaintiff sufficiently stated a § 1985 claim]. Therefore, the Defendants are not entitled to summary judgment on that part of Plaintiff's conspiracy claim.

## II.

### (Fraud Claim)

In order to properly plead the elements of a fraud claim, Plaintiff must set forth 1) a representation; 2) the falsity of the representation; 3) the materiality of the representation; 4) the Defendants' knowledge of the falsity of the representation or reckless disregard of its truth or falsity; 5) the Defendants' intent that the representation should be acted upon; 6) the Plaintiff's ignorance of the falsity; 7) the Plaintiff's reliance on the truth of the representation; 8) the Plaintiff's right to rely; and 9) consequent and proximate injury to the Plaintiff. Enhance-It, L.L.C. v. Am. Access Tech., Inc., 413 F.Supp.2d 626, 629-630 (D.S.C. 2006); May v. Peninger, No. 07-864, 2008 WL

15



509470, at * 6 (D.S.C. Feb. 22, 2008). Defendants' argue that Plaintiff has not established the requisite elements to survive summary judgment on this claim.

Defendants first argue that Plaintiff has failed to establish a fraudulent representation, because the fact that a promise made in the course of negotiations is never performed does not in and of itself constitute nor evidence fraud. Defendants further argue that even should the Court find that the acceptance of the partial security deposition is evidence of Defendants' intent that a representation be acted upon, the representation was not false because the Defendants' evidence shows that it was the Plaintiff's fault that he was not able to rent the property, and that they also attempted to return the security deposit. See Enhance-It, L.L.C., 413 F.Supp. 2d at 630, citing Coleman v. Stevens, 117 S.E. 305, 307 (S.C. 1923). However, Plaintiff's evidence previously cited is sufficient to give rise to a genuine issue of fact as to whether the Defendants represented to him that they would lease and/or sell him a house, that this representation was both material and false and the Defendants knew it was false, and that the Defendants intended Plaintiff to act upon the representation by paying a Two Hundred Dollar deposit. See Enhance-It, L.L.C., 413 F.Supp.2d at 630 (citing Coleman, 117 S.E. at 307). Plaintiff's sworn testimony is also sufficient for purposes of summary judgment to show that the Plaintiff was ignorant of the falsity of the representation but nevertheless relied on its truth, that Plaintiff had a right to rely on the representation by the Defendants that they would rent/sell him his residence, and that he was injured by the false representation because he lost his Two Hundred Dollar deposit.

The fact that the Defendants' evidence is to the effect that Plaintiff's testimony is false does not entitle them to summary judgment, as the Court must accept the Plaintiff's version of the facts to be true. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996)[At summary judgment, the facts



and evidence are considered in the light most favorable to the party opposing summary judgment]. Therefore, the Defendants are not entitled to summary judgment on Plaintiff's fraud claim. Gray, 925 F.2d at 95; Davis, 600 F.2d at 460; Cole, 633 F.2d at 1092; see Ross, Corp., 759 F.2d at 364.

### Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment with respect to Plaintiff's § 1985 conspiracy claim alleging that the Defendants engaged in a conspiracy to keep innkeepers and motel owners from giving him rooms in their establishments because he was a troublemaker and hated white people be **granted,** and that that claim be dismissed.

It is further recommended that the Defendants' motion for summary judgment with respect to Plaintiff's 1985 conspiracy claim alleging that the Defendants refused to rent a house to him and/or refund his deposit because he is an African-American be **denied**. Defendants' motion for summary judgment with respect to Plaintiff's state law fraud claim should also be **denied**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 17, 2010
Charleston, South Carolina

17



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

